UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SPENCER JOSEPH VIOLA                    CIVIL ACTION

VERSUS                                  NO: 10-1720
                                        c/w 10-1959

UNITED STATES, ET AL.                   SECTION: R

<u>ORDER AND REASONS</u>

This action involves the liability *vel non* of the United States for the action of its recruiter in an incident in which a recruit was injured.  Because the Court finds that the recruiter was not acting within the scope of employment, and the training and supervision of recruitment officers falls within the discretionary function exception, the Court holds that the government is immune from liability in this action.


**I.    BACKGROUND**

Spencer Viola sued the United States in civil action number 10-1720 alleging that its army recruiter, Joseph Abel, negligently caused Viola to be injured in an incident occurring outside of Sidelines Bar around midnight on July 4, 2009.[1]  Viola asserts that the United States is vicariously liable for Abel's negligence and that it is directly liable for its failure to properly train and supervise Abel in his interaction with

---

[1]  R. Doc. 1.  All record citations refer to documents in civil action 10-1720, unless noted otherwise.

recruits.   Viola also sued Founders Insurance Company, the
insurer of 1229 Inc., d/b/a Sidelines Bar and Grill, for the
bar's alleged breach of duty in allowing Viola to consume alcohol
to a point of intoxication and without ascertaining his age.
Later, Viola sued 1229 Inc., Founders Insurance Company and Abel
in state court for injuries arising from the same incident.[2]
1229 Inc. and Founders (collectively "Sidelines Bar") removed the
action on the basis that Abel was acting within the course and
scope of employment at the time of the alleged incident.[3]  On
September 3, 2010, the removed action was consolidated with civil
action number 10-1720.

The United States now moves in these consolidated actions to
dismiss for lack of subject matter jurisdiction, or alternatively
for summary judgment, on the grounds that Abel was not acting
within the scope of employment at the time of the alleged
negligence and that any claim for negligent training or
supervision is barred by the discretionary function exception to
the Federal Tort Claims Act.[4]  In support of its motion, the
United States has submitted the sworn statements of three
witnesses.[5]  No other party has submitted any evidence in

---

[2]  10-1959, R. Doc. 1-3.

[3]  10-1959, R. Doc. 1.

[4]  R. Doc. 17 at 2.

[5]  R. Doc. 17-4; R. Doc 17-5.

connection with the motion.  To the extent that the factual allegations in the complaint contradict the facts asserted in the submitted sworn statements, the Court relies on the sworn statements.  *See Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 994 (5th Cir. 2001) ("[T]he purpose of ... Rule 56(e) [is] to prevent the nonmoving party from merely relying on his pleadings when the moving party supported his motion for summary judgment with affidavits and other evidence."); *id.* at 994 n.38 ("A non-movant cannot rely upon his own unverified pleading to contradict factual matters properly before the court in support of the motion for summary judgment.") (quoting *Ratner v. Young*, 465 F. Supp. 386, 389 n.5 (D.V.I. 1979)).

Sidelines Bar opposes the United States' motion as to plaintiff's vicarious liability claim, but does not oppose dismissal of plaintiff's negligent supervision and training claim.  Viola does not oppose the government's motion on any ground.  Based on the evidence submitted, the Court determines that the government's motion must be granted.


**II.  STATEMENT OF FACTS**

On June 30, 2009, Viola enlisted in the U.S. Army under the deferred enlistment program.[6]  On the drive home from the

---

[6]  R. Doc. 1 at 2.

3

procuring station, Viola told defendant Joseph Abel, one of Viola's recruiting officers, that he worked as a bartender at Pub Zero.  On the night of July 4, 2009, Viola sent a text message to Abel informing him that he was at the Pub Zero bar.[7]  Abel replied to Viola's text message by asking if Viola was at Pub Zero working or just hanging out.[8]  Viola responded that he was hanging out.[9]

Abel and his girlfriend Celeste Combel met Viola at Pub Zero.[10]  Shortly thereafter, Abel and Combel decided to leave Pub Zero and go to another bar.  At that time, Viola asked for a ride because he was too intoxicated to drive himself and Abel agreed.[11]  The three drove to Sidelines Bar in Metairie, Louisiana.

After leaving Sidelines Bar at about 12:00 a.m., Abel jokingly asked Combel to carry him.[12]  Viola told Abel to get on his back and that he would carry Abel.[13]  Abel got on Viola's

---

[7]   R. Doc. 17-4, Ex. 1.A.

[8]   *Id.*

[9]   *Id.*

[10]   *Id.*

[11]   *Id.*

[12]   R. Doc. 17-4, Ex. 1.A.

[13]   *Id.*

back for a few steps, but as he jumped off, Viola fell to the ground and suffered serious injuries.[14]

## III. LEGAL STANDARD

### A) Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) requires dismissal if a court lacks jurisdiction over the subject matter of the plaintiff's complaint.  Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  In ruling on a 12(b)(1) motion to dismiss, the court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citations omitted).

In the context of the FTCA, a claim against the United States should not be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) based upon the resolution of the

---

[14]   *Id.*

disputed factual question whether an employee of the government was acting within the scope of his employment. *Montez v. Dep't of the Navy*, 392 F.3d 147, 151 (5th Cir. 2004) (citations omitted). Instead, it is incumbent on the court to apply a rule 12(b)(6) or summary judgment standard to resolve the issue, which is dispositive of both subject matter jurisdiction and the merits. *Id.*

### B. Motion for Summary Judgment

If a court considers materials outside the pleadings, it must treat a motion to dismiss as a motion for summary judgment under Rule 56(c), which requires notice to the nonmovant and an opportunity to respond with evidence. *See* Fed. R. Civ. P. 12(b); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 539 (5th Cir. 2003). Because the United States has submitted materials outside the pleadings with its motion, the Court will treat its motion as one for summary judgment. This will not prejudice Sidelines Bar, who had notice the Court might treat the United States' motion as one for summary judgment as demonstrated by its opposition titled "Memorandum in Opposition to United States' Motion to Dismiss For Lack of Subject Matter Jurisdiction or, Alternatively, Motion for Summary Judgment," and by the application of the summary judgment standard in its memorandum.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or

"showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).


IV. **DISCUSSION**

   A.   *The Federal Tort Claims Act and "Line of Duty"*

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted).  The terms of the United States' consent to be sued define the court's jurisdiction to entertain the suit. *Id.*  The FTCA provides a limited waiver

8

of sovereign immunity, subjecting the United States to liability for negligent or wrongful acts of government employees while in the course and scope of government employment.[15]  *See* 28 U.S.C. § 1346(b)(1) ("[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

Special provision is made for torts arising from the acts of military.  Under 28 U.S.C. § 2671, "acting within the scope of his office or employment in the case of a member of the military ... means 'acting in line of duty.'"  Courts generally equate "acting in line of duty" with traditional notions of scope of employment under the law of the state where the alleged negligent act or omission occurred, while considering the special factors characteristic of military activity and discipline.  *Bettis v.*

---

[15]  The parties do not dispute that Abel, an army recruitment officer, is a federal employee under 28 U.S.C. § 2671, which provides that "employee of the government includes officers or employees of any federal agency, members of the military or naval forces of the United States [and] members of the National Guard while engaged in training or duty."

*United States*, 635 F.3d 1144, 1147 (5th Cir. 1981); *see also*
*Craft v. United States*, 542 F.3d 1250, 1254-55 (5th Cir. 1976)
(after stating that line of duty is the "military equivalent of
scope of employment," the court considered whether the soldier
was performing a specific duty which had been assigned to him and
whether he was subject to military discipline); *Weaver v. U.S.
Coast Guard*, 857 F. Supp. 539, 542-43 (S.D. Tex. 1994), *aff'd*, 53
F.3d 1282 (5th Cir. 1995) ("This line-of-duty determination is
governed by state respondeat-superior laws, but considered in
light of 'special factors characteristic of military activity and
discipline,'" such as whether the service member was acting
pursuant to specific orders when the negligent act was committed
and whether he was governed by specific military regulations,
enforceable by military punishment and designed to govern the
conduct in which he was engaged at the time of the accident).

Under Louisiana law, an employer is liable for a tort
committed by his employee if, at the time, the employee is acting
within the scope of his employment- acting, as phrased under
Louisiana Civil Code Article 2330, "in the exercise of the
functions in which [he is] employed." *LeBrane v. Lewis*, 292 So.
2d 216, 217 (La. 1974) (quoting La. Civ. Code Ann. Art. 2320
(2010)). The Louisiana Supreme Court has addressed the "scope of
employment" issue on a number of occasions, both in intentional
tort and negligence cases. In *LeBrane v. Lewis*, the Louisiana

10

Supreme Court held that when a supervisory employee stabbed a former co-employee on the employment premises in an employment-related dispute, the tortious conduct occurred within the scope of employment. 292 So. 2d at 218-19. In holding the employer liable for the supervisor's actions, the Court specifically considered: (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. *See id.* at 218; *see also Baumeister v. Plunkett*, 95-2270 (La. 5/21/96); 673 So. 2d 994, 996-97 (listing the factors considered in *LeBrane*). Further, the Court stated that the supervisors's conduct was within the scope of employment because "the tortious conduct of the supervisor was so closely connected [in] time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *LeBrane*, 292 So.2d at 216.

Later, in *Orgeron v. McDonald*, the Court again addressed the "scope of employment" issue, this time in the context of a negligence action. 93-1353 (La. 7/5/94); 639 So. 2d 224. The Court stated that an employee's conduct is generally within the course and scope of his employment if it is the kind he is

11

employed to perform, occurs substantially within the authorized limits of time and space, and is undertaken at least in part to serve the employer. *Id.* at 227-28. The Court also provided a list of factors to consider in assessing whether an employee's conduct is employment rooted, including:

> the payment of wages by the employer, the employer's power of control, the employee's duty to perform the particular act, the time place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business, the benefits received by the employer from the act, the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.

*Id.* at 227 (citing *Reed v. House of Decor, Inc.*, 468 So. 2d 1159 (La. 1985)).

Despite a suggestion that the *LeBrane* factors apply only in intentional tort cases and that the *Orgeron* factors are tailored to apply to situations involving negligence, *see Wright v. Skate Country, Inc.*, 98-217, p. 8-9 (La. App. 4 Cir. 5/12/99); 734 So. 2d 874, the Louisiana Supreme Court has since applied *LeBrane* to negligence cases. *See Richard v. Hall*, 2003-1488, p.8 pincite (La. 4/23/04); 874 So. 2d 131, 139 (citing *LeBrane* in resolving whether employer was vicariously liable for an employee's negligent shooting of another person during a duck hunting trip); *Brasseaux v. Town of Mamou*, 99-1584, p. 11-12 (La. 1/19/00); 752 So. 2d 815, 823 (applying *LeBrane* factors in finding that employer was not vicariously liable for police officer's alleged

negligent failure to prevent an assault); *Russell* v. *Noullet*, 98-816, p. 5-8 (La. 12/1/98); 721 So. 2d 868, 872-73 (applying the *LeBrane* factors in reversing a judgment imposing liability on the City of New Orleans for damages that occurred when an off-duty police officer, who became involved in an altercation while drinking beer with his brothers, negligently fired his weapon into a crowd).  The Court notes that the analysis under both tests is very similar as the factors largely overlap.  The only apparent difference is that in "intentional tort cases ... it must be determined whether the tortious act itself was within the scope of the servant's employment, [while] the court in a negligence case need only determine whether the servant's general activities at the time of the tort were within the scope of his employment." *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 478 (La. 1990).  Consistent with the most recent Louisiana Supreme Court cases addressing the issue, the Court will apply the *LeBrane* factors to the facts of this case.

The Court finds that at the time of Abel's alleged negligence, he was not acting within the scope of employment.  First, Abel's general activities of drinking and socializing after hours with a recruit were not employment rooted.  Lee Hopkins, Commander, Recruiting and Retention Command of the U.S. Army stated in his affidavit that he is familiar with the Army's regulations and policies relevant to recruiting activities and

that it is not part of a recruiter's duties to engage in after hours social engagements, absent an official government function.[16]  Specifically, although a recruiter is expected to assist a new recruit with integration and offer advice, this does not include taking a recruit out to bars for purposes of drinking alcohol.[17]  *See Stidham v. United States*, No. 99-2794, 2000 WL 1171122, at *9 (E.D. La. Aug. 16, 2000) (finding that the tortious acts of army officers were not primarily employment rooted because, among other reasons, "[t]he Army imposes no duty on any of the three Officers to drive new recruits to New Orleans for a tour of Bourbon street [or] to provide new recruits with alcohol").

Sidelines Bar relies on *Pappas v. Marine Spill Response Corp.*, a workers' compensation case, in support of its assertion that Abel's negligent conduct occurred within the scope of employment.  94-879 (La. App. 3 Cir. 2/15/95); 650 So. 2d 441. The Court finds *Pappas* distinguishable.  In *Pappas*, the claimant was required to go to New Orleans for a convention sponsored by his employer and for which he was compensated.  *Id.* at 442.  On the night of his injury, the claimant went to a bar with the specific purpose of meeting potential business contacts.  *Id.* The Court held that the claimant was within the course and scope

---

[16]   R. Doc. 17-5, Ex. 2.

[17]   *Id.*

14

of his employment when he was injured because his attendance at the conference was required by his employer and he was acting for the direct benefit of his employer in going to the bar to establish business relationships.  *Id.* at 446.  Here, the evidence does not suggest that Abel sought out Viola to strengthen his commitment to the Army or acted in any other manner for the direct benefit of his employer.  Rather, the evidence shows that it was Viola who first contacted Abel on the night Viola was injured.[18]  Further, Abel did not invite Viola to Sidelines Bar; instead, Viola requested to ride with Abel because he was too intoxicated to drive himself home.[19]  In addition, unlike the claimant in *Pappas* who was required by his employer to attend the conference, Abel was not required to engage in any after hours social engagements with recruits, absent an official government function.[20]  Thus, the Court finds that Abel's social interactions with Viola were not employment rooted.

Second, the Court finds that Abel's actions were not reasonably incidental to the performance of his duties.  Although Abel was responsible for recruiting, he had no duty to bring Viola to a bar.  In addition, while Sidelines Bar argues that Viola's injury resulted from a challenge by Abel to carry him as

---

[18]  R. Doc. 17-4, Ex. 1.A.; R. Doc. 17-4, Ex. 1.B.

[19]  R. Doc. 17-4, Ex. 1.A.; R. Doc. 17-4, Ex. 1.B.

[20]  R. Doc. 17-5, Ex. 2.

15

a simulation of the "buddy carry drill," Sidelines Bar has presented no evidence to support this assertion.  Sidelines Bar's reliance on Viola's unsworn complaint fails to create a material fact issue.  "Only evidence- not argument, not facts in the complaint- will satisfy the burden and unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Idoux v. Lamar Univ. Sys.*, 37 F.3d 632, 1994 WL 558880, at *2 (5th Cir. 1994).

Finally, the alleged negligence in this case did not occur on the employer's premises or during the hours of employment. Here, Viola was injured outside of Sidelines Bar at 12:00 a.m.[21] The Court rejects Sidelines Bar's assertion that because Abel's employment extends beyond traditional business hours and locations, the alleged incident occurred within the course and scope of employment.  In *Hawkins v. Fowler*, an army recruiter and several co-employees went to a bar after work to socialize.  No. 09-639, 2010 WL 1851072, at *1 (M.D. La. May 7, 2010).  Later, the recruiter drove home while intoxicated and was involved in an accident.  *Id.*  Plaintiff argued that because the army recruiter worked long hours and discussed the Army with prospective recruits in various settings, like the bar he frequented on the night of the accident, the recruiter was "constantly working" and thus within the course and scope of his employment at the time of

---

[21]   R. Doc. 1 at 3.

the accident.  *Id.* at *5.  The court stated that if a recruiter were found to be "constantly working," the employer would be vicariously liable for all torts committed by its recruiters, and that such an expansive interpretation of the law was unjustified.  *Id.*  Although a recruiter's hours may in some circumstances extend the scope of employment beyond traditional business hours and locations, Abel's interaction with Viola at a bar at 12:00 a.m. does not fall within those circumstances.  *See Stidham*, 2000 WL 1171122, at *9 ("[T]he recruiting office does not stay open during the early hours of the morning to entertain and parade recruits in New Orleans.").

Accordingly, the Court finds that under the *LeBrane* factors, Abel was not acting within the course and scope of his employment at the time of Viola's injury.

### C.   *Negligent Training/Supervision and the Discretionary Function Exception*

Viola also asserts a claim against the United States for failure to properly train and supervise Abel and other officers in their interaction with recruits.  The United States argues that the training and supervising of recruitment officers is a discretionary function that is exempt from FTCA liability.  The government's motion is uncontested as to this claim.

The liability of the United States under the FTCA is subject to the discretionary function exception contained in 28 U.S.C. § 2680.  The exception specifies that the government is not liable for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The exception thus eliminates any waiver of immunity from suit for acts that involve an element of judgment or choice grounded in economic, political or social policy. *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  The "[g]overnment needs to establish there was 'room for choice' in making the allegedly negligent decision." *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007).  The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because the employee has no choice but to follow the course of action.  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  The Court undertakes a two-step inquiry to determine whether conduct falls within the discretionary function exception.  The Court determines (1) whether the challenged conduct involves an element of judgment or choice; and (2) whether the judgment at issue is the kind the

18

discretionary function exception was designed to shield, that is, whether it is grounded in social, economic or political public policy. *Id.*

When a governmental policy such as a statute, guideline, or regulation allows an agent to exercise discretion, courts may presume that the agent's acts are grounded in policy in the exercise of that discretion. *Gaubert*, 499 U.S. at 324. Congress created the discretionary function exception to protect those judgments based on public policy, because its purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 323 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).

The Court holds that decisions regarding training and supervising of army recruitment officers are discretionary in nature and thus immune from judicial review. The parties have pointed to no law or policy "specifically prescrib[ing]" the guidelines for the training and supervision of army recruitment officers. *See CNA v. United* States, 535 F.3d 132, 149 (3d Cir. 2008) (holding that while statutes such as 10 U.S.C. § 513 require the army to engage in recruiting, matters involving recruiting policies and actions required of recruiters are decisions for army officials and thus subject to the

19

discretionary function exception).  In the absence of a specific statute, guideline or regulation prescribing the training and supervision of employees and other individuals, courts have consistently found these matters to fall within the discretionary function exception.  *See*, *e.g., Guile v. United States*, 422 F.3d 221, 230-31 (5th Cir. 2005) (finding that army's decision to supervise and how closely to supervise health care organization's work were discretionary decisions); *Mercado Del Valle v. United States*, 856 F.2d 406, 408-09 (1st Cir. 1998) (holding that Air Force's supervision of student organization was discretionary function); *Gager v. United States*, 149 F.3d 918, 921-22 (9th Cir. 1998) (finding that the Postal Service's decision not to provide universal training and supervision to employees in mail bomb detection fell within the discretionary function exception); *Burkhart v. Wash. Metro. Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("Supervision decisions ... and [t]he extent of training with which to provide employees ... are surely among those [decisions] involving the exercise of political, social, or economic judgment."); *Flynn v. United States*, 902 F.2d 1524, 1531 (10th Cir. 1990) (finding that discretionary function exception protected United States from liability on negligent training claim where there were no fixed standards for training or use of emergency vehicles); *Carlyle v. United States*, 674 F.2d 554, 556-57 (6th Cir. 1982) (holding that army's decision of whether to

20

supervise recruits was a discretionary function).  Because the parties have pointed to no law, policy or guideline prescribing the supervision and training of recruiting officers, and training and supervision decisions are typically viewed as discretionary, the Court finds that plaintiff's negligent supervision and training claim is barred by the discretionary function exception.

### D.    Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  The Court has wide discretion to dismiss state law claims after dismissing all federal claims.  *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999).  The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial."  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002) (quoting *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir.

21

1999).  This rule, however, "is neither mandatory nor absolute."
*Smith*, 298 F.3d at 447.  In addition to the statutory provisions
of section 1367(c), the Court must balance the factors of
judicial economy, convenience, fairness and comity.  *Id.* at 446.

Here, the Court has dismissed all claims against the United
States.  Only state claims remain, and the Court has no
independent basis for jurisdiction over them.  The Court has not
yet addressed the merits of these claims, and as they exclusively
involve issues of state law, principles of comity weigh in favor
of allowing a state forum adjudicate them.  The Court therefore
finds that the rule counseling against the exercise of
supplemental jurisdiction over state-law claims when no federal
claims remain applies in this case.  Accordingly, the Court
dismisses the state law claims against Founders Insurance Company
in civil action 10-1720 without prejudice, and remands the state
law claims in civil action 10-1959 to the 24th Judicial District
Court for the Parish of Jefferson, State of Louisiana.


**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS the United
States motion, DISMISSES the federal claims WITH PREJUDICE,
DISMISSES the state law claims in Civil Action No. 10-1720
WITHOUT PREJUDICE, and REMANDS Civil Action No. 10-1959 to the

24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

New Orleans, Louisiana, this <u>20th</u> day of January, 2011.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

23